**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS,
DALLAS DIVISION**

| | | |
|---|---|---|
| **RYDER TRUCK RENTAL, INC., d/b/a RYDER TRANSPORTATION SERVICES,** | § § § § | |
| *Plaintiff,* | § § | **CIVIL ACTION NO. 3:15-CV-03325-N** |
| **V.** | § § | |
| **MAALT LP and DENETZ LOGISTICS, LLC,** | § § § | |
| *Defendant.* | § | |

<u>**REPLY TO PLAINTIFF'S RESPONSE TO MOTION TO INTERVENE**</u>

Maalt Specialized Bulk, LLC ("MSB") files this Reply to Plaintiff's Response to Motion

to Intervene in support of its motion to intervene, and shows the Court the following:

**Introduction**

This case is centered on the parties' obligations and performance under the Truck Lease

and Service Agreement.  While Ryder Truck Rental, Inc. d/b/a Ryder Transportation Services

("Ryder") attempts to cast this case as a simple collection case involving a guarantee, there is

nothing further from the truth.  Unlike a promissory note or straight lease with a guaranty, where

the creditor provides funds or equipment and then sits back and collects the money, the Truck

Lease and Service Agreement (the "Agreement") imposed significant obligations upon Ryder in

addition to providing trucks for lease.  Among those obligations were the obligations to provide

service facilities for the trucks and provide pegged maintenance service in order to keep the fleet

operational on a cost effective basis.  The service obligation was a material part of the Agreement.

This is not a case of a lease obligor simply failing to make payments.  Ryder failed to comply with

its service obligations, and MSB exercised its right to declare Ryder in breach of the Agreement and terminate the Agreement.

## Factual Background

In March 2014 and thereafter, MSB entered into the Agreement as well as the various amendments that are attached to Ryder's Complaint.  Notwithstanding MSB's payment of the amounts due under the Agreement, Ryder did not perform its obligations.  Among other things, Ryder failed to timely deliver trucks to MSB that were properly configured for the purpose of pulling trailers carrying fracing sand, failed to properly service the fleet under the pegged maintenance provisions of the Agreement, and failed to properly manage the costs of service and maintenance for the fleet.  As a result of Ryder's failure to properly perform its obligations under the Agreement, MSB sustained actual damages in excess of $300,000.00.

On September 15, 2015, MSB gave Ryder written notice that Plaintiff was in breach of the Agreement, and that MSB was exercising its lawful remedy of terminating the Agreement.  Ryder did not contest MSB's assertion that Ryder was in default; rather, it set out on a course of sending letters contending that MSB was in breach of the Agreement.  Eventually, Ryder began picking up its trucks and removing its equipment from MSB's facilities in mid-October 2015, shortly before filing this suit.

Ryder ignores these facts that led to this dispute.  That is, it did not claim that MSB was in breach of the Agreement *until after* MSB exercised its right to terminate the Agreement due to Ryder's breach.  By ignoring those facts, Ryder seeks to collect on a guarantee despite the fact that it materially breached the underlying agreement.  Intervention is needed so this Court can determine who first breached the Agreement, whether that breach excused the other's performance, and if there was a breach the extent of damages growing out of the breach.  That

determination must be decided before it can rule upon what, if anything, is owed under the guarantee.

## Rule 24 Policy Considerations and Standards

Rule 24 serves two important purposes:  (i) foster economy of judicial administration, and (ii) protect non-parties from having their interests adversely affected by litigation conducted without their participation.  *Stallworth v. Monsanto Co*., 558 F.2d 257, 265 (5th Cir. 1977).  The rule is to be liberally construed.  *Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014).  Intervention under Rule 24(a)(2) involves a flexible inquiry of the particular facts and circumstances of each case, and should be measured by a practical rather than technical yardstick.  *Edwards v. City of Houston*, 78F.3d 983, 999 (5th Cir. 1996); *United States v. Texas Eastern Transmission Corp.*, 923 F.2d 410, 413 (5th Cir. 1991).  Rule 24(b) is to be applied liberally, and intervention under that rule is measured by an abuse of discretion standard.  *Newby v. Enron Corp*., 443 F.3d 416, 422-423 (5th Cir. 2006).

## Intervention of Right

1.    **The application must be timely.**[1]  MSB filed its motion to intervene within a day of Ryder filing this suit.  The timeliness of the application is not in dispute.

2.    **The applicant must have an interest relating to the property or transaction that is the subject of the action.**  MSB is a party to the Truck Lease and Service Agreement, as well as the Maintenance Agreement, made the subject of Ryder's suit.  The guaranty upon which Ryder bases its claims against the Defendants is a part of the transaction created by the Truck Lease and Service Agreement, and would not exist but for that agreement.  MSB was an integral part of the transaction made the basis of this suit.

---

[1] The four requirements for intervention as of right are stated in *Brumfield v. Dodd, supra* at 341, and *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996).

In addition, if Ryder is successful in recovering from the Defendants, the Defendants will have a claim against MSB for recovery of any amount paid to Ryder.  *See Wiman v. Tomaszewicz*, 877 S.W.2d 1, 7 (Tex.App.-Dallas 1994, no pet.).  MSB clearly has an interest in the transaction that is the basis of this suit.  It has a right to *not* have to pay more than what it legally owes, if anything, whether to Ryder directly or indirectly through the Defendants.  Its interests are direct, substantial and legally protectable.  *Brumfield v. Dodd*, *supra* at 343.  As shown below, MSB's interests may be impaired by a decision in this case even if it were to prevail in a different case against Ryder.

Ryder intends to ignore the totality of the facts and issues and take the position that its failure to perform its obligations under the Agreement does not relieve the Defendants of liability under the Guaranty.  Under Ryder's theory, once the Agreement was signed and the guaranty obtained, it could recover from the Defendants under the Guarantee even if Ryder did nothing to meet its obligations under the Agreement.[2]  Ryder's position focuses on a flawed technical argument against intervention rather than a practical one.  In that vein, Ryder's theory and opposition to intervention ignores the fact that under Texas law, a guarantor's liability is contingent upon the principal obligor's default.  *See Mid-South Telecommunications Co. v. Best,* 184 S.W.3d 386, 391 (Tex.App.-Austin 2006, no pet.); *Playboy Enterprises, Inc. v. Sanchez-Campuzano*, 519 Fed.Appx. 291 at **3 (5th Cir. 2013); *Sterling Property Management, Inc. v. Texas Commerce*

---

[2] Ryder's reliance upon *PDVSA Servs., Inc. v. Transeguro C.A. de Seguros,* 2009 WL 2485590 (August 6, 2009, S.D. Tex.) is misplaced.  Although that court initially denied intervention, it later ruled that it could not proceed with the guaranty lawsuit until the underlying lawsuit was fully adjudicated. Because the enforceability of the guaranty was dependent upon the judicial determination of liability under the underlying agreement, it stayed the guaranty action until the underlying dispute was finalized.  *PDVSA Servs., Inc. v. Transeguro C.A. de Seguros,* 2010 WL 1994195 *7 (May 17, 2010, S. D. Tex.).   Because the enforceability of the guaranty was wholly dependent on the adjudication of the underlying contract, the Court stayed the guaranty lawsuit until such time as the primary contract could be fully adjudicated.  The same must be done in this case.

*Bank,* 32 F.3d 964, 967 (5th Cir. 1994).  Therefore, the issue of whether the alleged MSB breach was excused by Ryder's prior breach, and if not, the extent of MSB's liability, if any, must be adjudicated before any liability on the guarantee can be determined in this case.

3.     **The applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest.**

If MSB is not allowed to intervene, it will face the possibility of inconsistent judicial rulings, and potentially have to pay amounts it is not legally obligated to pay.  Ryder cavalierly takes the position that MSB can protect its interests by filing a different lawsuit; however, that exacerbates the problem.  For example, MSB could potentially file a suit against Ryder and obtain a declaration that it has no obligation to Ryder due to Ryder's prior breach of the Truck Lease and Service Agreement.  On the other hand, if Ryder is successful in contending that Defendants cannot assert any defense to Ryder's claim (as it seems to be doing), then Ryder could potentially obtain a recovery against the Defendants.  Then, Defendants could proceed to recover the amounts they might pay from MSB.  Or, if Ryder is successful across the board but recovers different amounts in two different suits, MSB could potentially have to pay one judgement and then reimburse the Defendants for the other.

In those examples and if MSB is required to file a separate lawsuit, MSB would not be able to protect its interests in this case as it would not be a party and would not be able to assert its defenses.  Since the Defendants' potential liability under the guarantee can only be the amount that a court may find MSB owes Ryder under the agreements at issue in this suit, if any, adjudicating those issues in two separate suits does nothing but promote judicial *inefficiency* and the possibility of *inconsistent* judicial rulings.  Both are contrary to the policy behind Rule 24.

Ryder's position on the intervention rests entirely on the technical yardstick instead of the practical in order to try to further its agenda of recovering amounts that it is not owed.  As demonstrated not only by its response (Doc. 6), but also by its Complaint (Doc. 1), Ryder would have this Court completely ignore the facts demonstrating the actions that MSB took to protect its interests prior to this suit.  It claims that MSB could file a separate suit only because it does not want this Court to hear of Ryder's failure to perform its obligations under the agreements at issue. If the intervention is denied, *none* of the purposes of Rule 24 would be served.

This Court, however, should look to the entire facts and circumstances of this case and use a practical yardstick to determine that intervention is appropriate.  Allowing MSB's intervention would foster judicial economy, protect against inconsistent results, and allow all of the parties to adequately pursue and protect their interests in one forum.  *All* of the purposes of Rule 24 would be served.

4.      **The applicant's interest must be inadequately represented by the existing parties to the suit.**

Ryder's position on this requirement seems to be simply this:  the Defendants and MSB are represented by the same lawyers, therefore MSB's interest is adequately represented.  It cites a case for that proposition.  However, that alone is not a steadfast rule and ignores judicial reality. The case relied upon by Ryder bears that out.  On this point, Ryder relies on *Carroll v. Am. Fed. Of Musicians*, 33 F.R.D. 353 (S.D. N.Y. 1963) even though the facts of that case bear no semblance to those involved in this case, and the court's denial of the Rule 24(a) application is not dispositive. Despite denying intervention as of right, the court in *Carroll* allowed permissive intervention under Rule 24(b).[3]

---

[3] In the *Carroll* case, the proposed intervenors sought intervention on the eve of trial and more than two years after the antitrust action was brought against a musicians' union.  The proposed intervenors were also

It is clear that Ryder excluded MSB when it filed this suit because it wants the Court to disregard defenses to its claim that can be asserted by MSB, but that may not be assertable by the Defendants.  Unlike a promissory note case where money was advanced and simply not repaid, this case involves contracts that imposed continuing obligations on Ryder that, if not performed, would excuse MSB from further performance.  Since a guarantor's liability is the same as and no greater than that of the principal obligor, *Pham v. Mongiello*, 58 S.W.3d 284, 288 (Tex.App.-Austin 2001, pet. denied), this Court must hear the whole case and rule on the totality of the facts and circumstances.

As mentioned above, if Ryder is successful in obtaining a recovery from Defendants that is greater than MSB's adjudicated obligation to Ryder, then MSB will be faced with the prospect of reimbursing Defendants for something that it does not owe, regardless of whether they are represented by the same or different lawyers.  The only way that MSB can adequately protect its interests is to present its own defenses and evidence in support of those defenses in this case so that the Court can rule on all of the parties' rights and obligations in the same judicial proceeding.

The case of *Coleman Capital Corp. v. Fidelity & Deposit Co. of Md.*, 43 F.R.D. 407 (S.D. N.Y. 1967) is dispositive on this point.  The *Coleman* case was brought by a subcontractor's assignee seeking payment of amounts due for work on a construction project.  The plaintiff sued the general contractor's surety to recover on a payment bond.  The general contractor applied to intervene in order to assert it defenses to the claim for payment.  In response to the application, the plaintiff argued that the surety could represent the general contractor's interests adequately. However, the court found that the surety could not interpose the general contractor's personal

---

plaintiffs in a companion case asserting essentially the same types of claims.  The lawyers challenging the union on both cases were the same and represented both the Carroll plaintiffs and the proposed intervenors. Despite those facts, the court allowed intervention.

defenses, and, therefore, could not adequately represent the general contractor's interests. The court held that all parties to a transaction are required for a court to grant complete relief and avoid a multiplicity of actions in various forums. Based on that rationale, the intervention was granted.

The court in *Coleman* recognized that a surety, who holds essentially the same position as a guarantor, cannot adequately represent the interests of the principal obligor on a fundamental level, regardless of who their attorneys are. This Court should likewise look at the substance of the differences in position between the Defendants and MSB, and not merely superficial factors.

## Permissive Intervention

In the alternative, MSB seeks leave to permissively intervene pursuant to Rule 24(b)(1)(B) because it has a claim or defense that shares with the main action a common question of law or fact. As seen from Ryder's Complaint, MSB's obligations and alleged liabilities under the Agreement are a central issue in the case, and the Defendants' alleged liabilities are completely dependent on MSB's alleged liability. Therefore, any adjudication of the Defendants' liabilities, if any, will first require an adjudication of MSB's liabilities, if any. *Bituminous Casualty Corp. v. Garcia*, 223 F.R.D. 308 (N.D. Tex. 2004).

*U.S. ex rel. Milestone Tarant, LLC v. Federal Ins. Co*., 815 F.Supp.2d 36 (D.C. 2011), dictates that permissive intervention is appropriate in this case. Like *Coleman, supra*, it was a suit on a Miller Act construction bond against the surety and the contractor sought to intervene. Citing *Coleman*, the court found:

> Administratively, it's far more efficient for Manhattan to intervene in this action because it deals with the same subject matter and will allow these conflicting claims to be resolved once and for all quickly. The Joint Venture is more likely to be prejudiced if this Court *doesn't* allow Manhattan to intervene to have the conflicting claims sorted out because sorting them out one at a time could lead to conflicting rulings and would certainly take much more time. Thus, Manhattan's intervention is proper and won't prejudice any of the original parties' rights.

815 F.Supp.2d at 39.

In its response, Ryder contends that it "is entitled to collect the debt from Maalt . . . without . . . first having to prove Maalt Specialized's liability under the Agreements." Response p. 11. Ryder's statement and argument completely ignores Texas law. While an absolute guaranty may dispel certain defenses, it does not dispel the requirement that the principal breached the underlying agreement. In *Greenway Bank & Trust of Houston v. Smith*, 679 S.W.2d 592, 595 (Tex.App.-Houston [1st Dist.] 1984, writ ref'd n.r.e.), the court stated, "As an absolute guarantor, the guarantor becomes completely liable *upon the principal's breach . . ..*" [Emphasis added.] *See also Playboy Enterprises, Inc. v. Sanchez-Campuzano*, 519 Fed.Appx.at **3 (noting that under Texas law a guarantor's liability is *contingent upon* the principal's default under the underlying agreement).

Therefore, the Court should exercise its jurisdiction to give MSB the right to permissively intervene for the following reasons:

i.     Since the extent of the Defendants' liability cannot exceed MSB's underlying obligations, if any,[4] and only exists if MSB has liability to Ryder,[5] the actions should be tried together to promote judicial consistency and economy since they involve the same facts, transactions, and issues; and

ii.    Ryder should not be able to hide behind its technical arguments attempting to obtain an unjust result when the substance of the case dictates otherwise;

iii.   Granting permissive intervention would not prejudice any existing party as their legal rights would remain the same;

iv.   Denying intervention would require that the Court abate this proceeding until a judicial determination is made that (a) MSB breached the Truck Lease and Service Agreement as well as the Maintenance Agreement, and (b) MSB is indebted to Ryder for some amount of money since the liability of MSB, if any, as not been determined or liquidated;

v.    Granting intervention would further justice and eliminate any possibility of inconsistent judicial remedies

---

[4] S*ee U.S. v. Little Joe Trawlers, Inc.*, 776 F.2d 1249, 1252 (5th Cir. 1985).
[5] S*ee Playboy Enterprises, Inc. v. Sanchez-Campuzano, supra* at **3; *Sterling Property Management, Inc. v. Texas Commerce Bank*, 32 F.3d 964, 967 (5th Cir. 1994).

WHEREFORE, Maalt Specialized Bulk, LLC requests that this motion to intervene be granted.

Respectfully submitted,

By: /s/ James Lanter

James Lanter
State Bar No. 11940700
JAMES LANTER, P.C.
560 N. Walnut Creek, Suite 120
Mansfield, Texas  76063
(817) 453-4800
(817) 453-4801 FAX
jim.lanter@lanter-law.com

Paul O. Wickes
State Bar No. 00788663
WICKES LAW, PLLC
5600 Tennyson Parkway
Suite 205
Plano, Texas  75024
(972) 473-6900
(972) 767-3225 FAX
pwickes@wickeslaw.com

ATTORNEYS FOR INTERVENOR
MAALT SPECIALIZED BULK, LLC

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served on all counsel of record via the court's electronic filing and service system on November 19, 2015.

/s/ James Lanter
James Lanter