IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| RYDER TRUCK RENTAL, INC., d/b/a RYDER TRANSPORTATION SERVICES, § § § § | | |
| Plaintiff, § § | | |
| v. § | Civil Action No. 3:15-CV-3325-N | |
| § § | | |
| MAALT LP, *et al.*, § § | | |
| Defendants. § § | | |

# **ORDER**

This Order addresses Defendants Maalt LP ("Maalt") and Denetz Logistics, LLC's ("Denetz") motion to compel [43]; Maalt and Denetz's second motion to compel [47]; Maalt, Denetz, and Intervenor Maalt Specialized Bulk, LLC's ("MSB") (collectively, "Defendants") motion to strike; Plaintiff Ryder Truck Rental, Inc. d/b/a Ryder Transportation Services' ("Ryder") motion to exclude testimony; Defendants' motion for partial summary judgment [52]; and Ryder's motion for partial summary judgment [55]. The Court denies Maalt and Denetz's first motion to compel, and grants Maalt and Denetz's second motion to compel. The Court denies the motion to strike and the motion to exclude testimony. Because an issue of fact remains as to the reasonableness of the liquidated damages formula, the Court denies the Defendants' motion for partial summary judgment. Because Defendants cannot show that Ryder's statements made during negotiations were not legitimate promises of future performance or mere puffery, the Court grants Ryder's motion for partial summary judgment

on the issue of fraudulent inducement. The Court denies Ryder's motion for partial summary judgment on all other issues.

## I. ORIGINS OF THE DISPUTE

This dispute arises out of a Truck Lease and Service Agreement (the "TLSA") between MSB and Ryder for the lease and service of ninety-two (92) trucks for eighty-four (84) months. The TLSA provided that in the event of a default and a failure to correct that default, MSB would reimburse Ryder for a promotional incentive in the amount of $1,333.33 per truck. *See* App. to Ryder's Mot. for Partial Summ. J., Ex. A-1 ("TLSA") 29 [57-1]. Further, the TLSA allowed Ryder the right to terminate the TLSA and to require MSB to purchase the trucks at a defined "Schedule A Value." *See id*. at 16. If MSB refused to timely purchase the trucks, Section 13(C) of the TLSA then required Ryder to pay the difference between the Schedule A value and the wholesale value of the trucks. *See id*. Section 15(H) of the TLSA stated that all remedies in the TLSA are cumulative. *See id*. at 17. Maalt executed a General Guaranty Agreement (the "Guaranty"), by which Maalt guaranteed to Ryder payment and performance of any and all obligations under the TLSA. MSB and Ryder entered into a Managed Maintenance Comprehensive Solutions Agreement (the "Maintenance Agreement), in which Ryder agreed to maintain and service one hundred (100) of MSB's pneumatic trailers. Under the Maintenance Agreement, MSB agreed to pay a fixed monthly charge per trailer, as well as actual maintenance charges.

Ryder alleges that MSB stopped paying Ryder's invoices in August 2015, and that invoices collectively totaling $215,243.00 became past due on August 31, 2015. *See* Pl.'s

Br. in Supp. of Mot. for Partial Summ. J. ("Ryder's MSJ") 8 [56]. MSB sent a letter to Ryder, claiming that Ryder failed to maintain and repair the vehicles, failed to correct flaws on the vehicles that resulted in an inability to use the vehicles as intended, failed to properly bill Maalt, failed to properly manage costs, and failed to man service sites during hours of operation. *See id*. at 8–9. Ryder notified MSB that it was in default. *See id*. at 9. Because Ryder alleges that MSB did not cure the default, Ryder terminated the Agreements on October 13, 2016. Ryder also alleges that it notified Maalt of MSB's default and that Maalt refused to pay under the Guaranty. *See id*.

Ryder brought this action for breach of the Guaranty against Maalt and Denetz. Maalt and Denetz counterclaimed for a declaration of rights and the extent of their obligations under the Guaranty, as well as MSB's obligations under the TLSA and Maintenance Agreement. Maalt and Denetz allege that Ryder fraudulently induced Maalt and MSB to sign the Guaranty and the TLSA and Maintenance Agreement. They also allege that Ryder breached the contracts first. MSB intervened in the lawsuit, seeking a declaration that Ryder committed fraud and breached first. MSB also asserts a breach of contract claim against Ryder. Ryder then brought a counterclaim against MSB for breach of the TLSA and Maintenance Agreement.

On June 8, 2017, this Court issued an Order granting the Defendants leave to amend their pleadings to address Ryder's intent to seek liquidated damages under Section 13(C) of the TLSA, and denying Defendants leave to amend their pleadings to address Ryder's alleged failure to mitigate damages. *See* Order June 8, 2017 [60].

## II. THE MOTIONS TO COMPEL

### A. The Motion to Compel Standard

The Federal Rules of Civil Procedure state a "party seeking discovery may move for an order compelling an answer, designation, production, or inspection." FED. R. CIV. P. 37(a)(3)(B). Rule 26 allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Relevancy "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978). Thus, a court should allow the requested discovery "if [it] appears reasonably calculated to lead to the discovery of admissible evidence." FED. R. CIV. P. 26(b)(1); *see also Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1342 (5th Cir. 1978). The party seeking discovery bears the initial burden to establish that the requested discovery is relevant. *See, e.g.*, *Abraham v. Alpha Chi Omega*, 271 F.R.D. 556, 559 (N.D. Tex. 2010). Courts should consider a number of factors when determining whether discovery is proportional to the needs of the case, including "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

A district court has wide discretion to supervise discovery. *Landry v. Air Line Pilots Ass'n Int'l AFL-CIO*, 901 F.2d 404, 436 n.114 (5th Cir. 1990). It may limit discovery if the

requested discovery would be unreasonably cumulative, duplicative, or could be obtained more easily from a different source, or if the burden or expense of the proposed discovery outweighs its potential benefit. FED. R. CIV. P. 26(b)(2)(C). However, after the party seeking discovery establishes relevance, the party resisting discovery has the burden to show why the requested discovery is irrelevant, overly broad, or unduly burdensome or oppressive. *See, e.g.*, *Abraham*, 271 F.R.D. at 559.

### *B. The Court Grants in Part the Motion to Compel Discovery Responses Pertaining to Liquidated Damages*

Maalt and Denetz move the Court to compel Ryder to produce documents and information sought through Maalt's second request for production and second set of interrogatories pertaining to Ryder's claim for liquidated damages. Ryder objects on grounds that the Court granted Defendants leave to address liquidated damages in part because whether a liquidated damages clause is a penalty is a question of law, which should not require significant factual development. The discovery Maalt and Denetz seek is relevant to whether Ryder's lost profits are capable of calculation, and nothing in the Court's Order of June 8, 2017 prevents Maalt and Denetz from seeking it. Accordingly, the Court grants Maalt and Denetz's motion to compel discovery responses to their second request for production and second set of interrogatories pertaining to liquidated damages. However, the Court denies the motion to compel a response to Request for Production No. 7 in Maalt and Denetz's second request for production of documents, which requests documents relating to Maalt's failure to mitigate defense, which the Court denied Defendants leave to add.

### *C. The Court Denies the Motion to Compel Discovery Responses Pertaining to Employee Scorecards*

Maalt and Denetz move the Court to compel Ryder to produce performance "scorecards," which are effectively performance reports for Ryder's employees, created by Ryder in connection with its operation of facilities servicing the trucks and trailers at issue in this case. Maalt and Denetz discovered the existence of these documents during the depositions of two of Ryder's employees in March 2017. Ryder objects on grounds that the scorecards do not delineate between performance ratings for work done for MSB and performance ratings for work done for other Ryder clients. A scorecard may show an employee's performance pertaining to downtime across multiple Ryder client accounts, but it would not specifically show that employee's performance pertaining to downtime on MSB vehicles. Thus, Ryder argues that the documents are not responsive. The Court agrees that the documents sought by Maalt and Denetz are not likely to lead to the discovery of admissible evidence. Accordingly, the Court denies Maalt and Denetz's motion to compel discovery responses pertaining to employee scorecards.

### III. THE COURT DENIES THE MOTIONS TO STRIKE EXPERT TESTIMONY

The Defendants move the Court to exclude the expert testimony of Ryder employee Michael Hotchkiss because he is not qualified to offer the opinion, and because the opinion is not based on his own analysis or grounded in any reliable methodology. Ryder moves the Court to strike the expert testimony of J. Kyle Rosen because his opinion is not reliable, his opinion about the orderly liquidation value of the vehicles in this case is irrelevant, and because Rosen's expert report is deficient. Because the Court concludes that the experts and

the challenged testimony satisfy the requirements of Federal Rules of Evidence 702 and 403, and because the Court finds that Rosen's expert report complies with Federal Rule of Civil Procedure 26(a), the Court denies the respective motions to exclude expert testimony and to strike.

## IV. THE MOTIONS FOR SUMMARY JUDGMENT

Defendants move the Court to grant partial summary judgment, declaring that Section 13(C) of the TLSA is an unenforceable penalty. Ryder moves the Court to grant partial summary judgment, declaring that Maalt and Denetz are liable for breaching the Guaranty, that MSB is liable for breaching the TLSA and the Maintenance Agreement, that alleged prior material breach by Ryder does not excuse MSB, that Section 13(C) of the TLSA is enforceable, and that Defendants' fraudulent inducement defense is unavailing. Ryder argues that the only remaining triable issue is damages. Because an issue of fact remains as to the reasonableness of the liquidated damages formula, the Court denies Defendants' motion for partial summary judgment. Because Defendants cannot show material misrepresentations made by Ryder, the Court grants Ryder's motion for partial summary judgment on Defendants' fraudulent inducement claim. Because fact issues remain as to whether Ryder materially breached the contracts, the Court denies the remainder of Ryder's motion for partial summary judgment.

### *A. Material Issues of Fact Remain as to the Principal Purpose of the TLSA*

Defendants argue that summary judgment is appropriate on Ryder's claim that if it prevails it is entitled to recover liquidated damages pursuant to Section 13(C) of the TLSA. Defendants argue that under Florida law, Section 13(C) is an unenforceable penalty because it is not the exclusive remedy under the contract.[1] Under Florida common law, Defendants argue, "Florida courts have consistently recognized as a penalty a stipulated damages provision that allows the non-breaching party a choice of options in the event of a breach." *MCA Television, Ltd. v. Public Interest Corp.*, 171 F.3d 1265 (11th Cir. 1999). Ryder, however, argues that this case law is inapposite because Maalt, as an absolute guarantor, cannot assert this defense, and because the UCC applies to the TLSA.

First, the Court notes that Defendants, including Maalt, are entitled to assert their defense to Section 13(C) of the TLSA. A guarantor will not be liable when there is no obligation or liability in the first place. "The liability of a surety is of course commensurate with that of its principal . . . ." *Universal Metals & Machinery, Inc. v. Bohart*, 539 S.W.2d 874, 879 (Tex. 1976) (quoting *E'Town Shopping Center, Inc. v. Lexington Finance Co.*, 436 S.W.2d 267, 269 (Ky. Ct. App. 1969)). However, the UCC, as enacted in Florida, explicitly allows for liquidated damages. *See* FLA. STAT. ANN. § 680.504(1) ("Damages payable by either party for default or any other act or omission . . . may be liquidated in the lease agreement . . . at an amount or by a formula that is reasonable in light of the then-anticipated

---

[1] Section 15(L) of the TLSA states that it "shall be subject to, construed and interpreted under the laws of the State of Florida without regard to its conflict of law provisions." TLSA at 17.

harm caused by the default or other act or omission."). Additionally, the UCC states that damages shall be cumulative of the parties' other remedies. *See* FLA. STAT. ANN. § 680.501(2) ("If the lessor or the lessee is in default under the lease contract, the party seeking enforcement has rights and remedies as provided in this chapter and, except as limited by this chapter, as provided in the lease agreement."); *see also* FLA. STAT. ANN. § 680.501(4) ("Except as otherwise provided in this chapter or the lease agreement, the rights and remedies referred to . . . are cumulative.").

Whether the UCC applies is generally a question of fact. *See BMC Indus., Inc. v. Barth Indus., Inc.*, 160 F.3d 1322, 1331 (11th Cir. 1998). However, "[w]hen there is no genuine issue of material fact concerning the contract's provisions . . . a court may determine the issue as a matter of law." *Id*. Here, though the parties dispute whether the liquidated damages clause functions as a penalty, the terms of the contract itself are clear and undisputed. Even if Defendants contend that they subjectively believe the provision of services is of greater importance to them than the lease of trucks, "[t]he contract, once created, is to be interpreted in accordance with the objective import of its unambiguous terms." *U.S. v. Blankenship*, 382 F.3d 1110, 1134 (11th Cir. 2004) (quoting *U.S. v. Weaver*, 905 F.2d 1466, 1473 (11th Cir. 1990)); *see also Gendzier v. Bielecki*, 97 So.2d 604, 608 (Fla. 1957) ("The writing itself is the evidence of what they meant or intended by signing [the document]."). The Court examines what the parties bargained for, as expressed in the contract itself. Because the Court here determines that there are no material issues of fact

as to the terms of the contract, the Court holds as a matter of law that the contract is predominantly one for the lease of goods.

Where a contract is one for both the lease of goods and provision of services, Florida courts determine the predominant purpose of the contract. *See BMC*, 160 F.3d at 1330. In making this determination, courts consider several aspects of the contract, including: (1) the language of the contract; (2) the manner in which the transaction was billed; and (3) whether the goods are movable. *See id*. Here, the TLSA dedicates the first section of the contract to the "Equipment Covered and Term." *See* TLSA at 13. Language referring to "equipment" is peculiar to goods rather than services. *BMC*, 160 F.3d at 1330 (citing *Bonebrake v. Cox*, 499 F.2d 951, (8th Cir. 1974)). The TLSA dedicates sections of the contract to the lease term, loss, theft, or destruction of goods, expiration of the lease, rights to terminate the lease, and assignment of the lease. In contrast, only one section of the TLSA is explicitly dedicated to the service Ryder provides, which is service of the leased goods. *See* TLSA at 13. Further, at its highest point between April 2014 to August 2015, MSB paid $34,485.00 per month for truck maintenance. *See* App. to Ryder's Mot. for Partial Summ. J., Ex. B-2 [57-1]. This amount is only 17.95% of fixed lease charges. When "the charge for goods exceeds that for services, the contract is more likely to be for goods." *BMC*, 160 F.3d at 1330. Finally, the trucks at issue in the TLSA are movable goods. "Movable goods is [a] hallmark of a contract for goods rather than services." *Id*. The UCC defines goods as all things movable at the time of identification to the contract for sale. *See id*; *see also* FLA. STAT. ANN. §

672.105(1). Accordingly, the Court holds that the TLSA is primarily a contract for the lease of goods, and thus, the UCC governs the TLSA.

Material issues of fact remain, however, as to whether the formula at issue is reasonable in light of the then-anticipated harm caused by default. Accordingly, the Court holds that the UCC governs the TLSA, however summary judgment is not appropriate on the issue of whether Section 13(C) is an enforceable measure of damages

### B. Ryder Did Not Make Material Misrepresentations of Existing Fact During Negotiations

Defendants assert fraudulent inducement as a defense to Ryder's claims for breach of contract. Defendants argue that Ryder gave false and misleading information to Maalt and to MSB to induce them into signing the TLSA and the Guaranty, respectively. Ryder moves for summary judgment on this defense, arguing that there is no evidence that Ryder misrepresented its existing capabilities, that promises of future performance are not fraudulent, and that Ryder's predictions of benefits to MSB are nonactionable opinions or mere puffery.

The party asserting a fraudulent inducement defense must establish that: "(1) a material misrepresentation was made; (2) when the misrepresentation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (3) the speaker made the misrepresentation with the intent that the other party should act on it; and (4) [the claimant] detrimentally relied on the misrepresentation." *Recursion Software, Inc. v. Interactive Intelligence, Inc.*, 425 F.Supp.2d 756, 785 (N.D. Tex. 2006) (quoting *Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 545 (5th Cir. 2003)). A promise

of future performance is an actionable misrepresentation only "if the promise was made with no intention of performing at the time it was made." *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998); *accord Hoffman v. AmericaHomeKey, Inc.*, 23 F.Supp.3d 734, 743–44 (N.D. Tex. 2014)). Further, "'puffing' or opinion" are not misrepresentations of material fact and cannot constitute fraud. *Prudential Ins. Co. of America v. Jefferson Associates, Ltd.*, 896 S.W. 2d 156, 163 (Tex. 1995).

Defendants claim that Ryder made material misrepresentations during a sales presentation that "highlighted its claimed efficiencies as a fleet service provider," including promoting itself as having the largest system of shops among its competitors, and claiming that it did not use franchises or dealerships for maintenance, that it had predictable budgeting and billing, that it had capable technicians, and that it would install captive shops at MSB's facilities where Ryder trucks are operated. *See* Defs.' Br. in Supp. of Resp. to Pl.'s Mot. for Partial Summ. J. 35 [80]. Defendants claim that Ryder's employees made representations that Ryder would increase the level of service that MSB was receiving, that it would effectively control MSB's costs of servicing the fleet through pegged maintenance provisions, that Ryder would go where MSB goes, and that Ryder would perform repairs and maintenance at the pegged rates. *See id*. at 35–36. Defendants do not produce evidence sufficient to show that Ryder did not intend to follow through on its obligations under the TLSA or the Guaranty. Defendants provide, at most, evidence of ways in which Defendants failed to perform under the contract or failed to meet their stated goals. However, "[b]reach

alone is no evidence that breach was intended when the contract was originally made." *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 305 (Tex. 2006).  And though Defendants and Ryder dispute whether rebill rates were consistent with terms in the TLSA allowing for rebilling, a "dispute over contract terms at trial [is] not evidence that [a party] did not intend to perform." *Arete Partners, L.P. v. Gunnerman*, 594 F.3d 390, 396 (5th Cir. 2010).  Further, statements that Ryder would effectively control MSB's costs or would maximize MSB's fleet are mere opinion or puffery, "vague and optimistic" and insufficient to support a claim for fraud.  *Brody v. Zix Corp.*, 2006 WL 2739352, at *3 (N.D. Tex. 2006).  Thus, Defendants fail to identify a material misrepresentation of Ryder's made with knowledge of or reckless disregard for the statement's falsity.  Accordingly, the Court grants summary judgment in favor of Ryder on the issue of fraudulent inducement.

### C. Material Issues of Fact Remain as to Whether Ryder Committed a Prior Material Breach

Ryder moves the Court for partial summary judgment on its claims that Maalt and Denetz are liable for breaching the Guaranty, that MSB is liable for breaching the TLSA, that Ryder's alleged prior material breaches cannot excuse MSB's performance, and that Section 13(C) is a valid liquidated damages clause.

As set forth in Section IV.A, *supra*, issues of material fact remain to determine whether Section 13(C) is an enforceable measure of damages.  Additionally, the Court notes that Maalt and Denetz may assert prior material breach as a defense to their liability because a guarantor will not be liable when there is no obligation or liability in the first place.  "The liability of a surety is of course commensurate with that of its principal . . . ." *Universal*

*Metals & Machinery, Inc.*, 539 S.W.2d at 879 (quoting *E'Town Shopping Center, Inc.*, 436 S.W.2d at 269). Because material issues of fact remain as to whether Ryder committed prior material breaches that would excuse non-performance by the Defendants, the Court denies Ryder's motion for partial summary judgment on its remaining claims.

## CONCLUSION

The Court denies Maalt and Denetz's first motion to compel, and grants Maalt and Denetz's second motion to compel. The Court denies the motion to strike and the motion to exclude testimony. The Court denies Ryder's motion for partial summary judgment on all claims except the Defendants' defense of fraudulent inducement. The Court denies the Defendants' motion for partial summary judgment.

Signed July 12, 2017.

_____
David C. Godbey
United States District Judge